School Comm. of South Hadley *v.* South Hadley Education Assn. — Massachusetts Teachers Assn.

SCHOOL COMMITTEE OF SOUTH HADLEY *vs.* SOUTH HADLEY EDUCATION ASSOCIATION — MASSACHUSETTS TEACHERS ASSOCIATION.

No. 00-P-1022.

Hampden. March 11, 2002. - May 9, 2002.

Present: BECK, MASON, & GREEN, JJ.

*Arbitration,* School committee, Collective bargaining, Authority of arbitrator. *School and School Committee,* Collective bargaining, Arbitration.

Discussion of this court's limited role in reviewing an arbitrator's award pursuant to G. L. c. 150C, § 11. [668-669]

An arbitrator did not exceed his authority either in finding that a school committee had violated a collective bargaining agreement (agreement) by failing to conduct a fair and accurate review of the job classification of an employee whose duties had been materially changed during the term of the agreement, or in concluding that this violation was subject to the grievance and arbitration procedure contained in the agreement [669-671]; further, the arbitrator's award, which instructed the parties to meet and negotiate between themselves an appropriate remedy, did not improperly direct the parties to reopen negotiations on an item or matter covered by the agreement, in violation of the agreement's "zipper clause" [671].

This court declined to consider an argument not properly briefed on appeal. [672]

CIVIL ACTION commenced in the Superior Court Department on August 29, 1997.

The case was heard by *Mary-Lou Rup,* J.

*Richard A. Mullane* for the defendant.

*Gordon D. Quinn* for the plaintiff.

MASON, J. Both the plaintiff, the school committee of South Hadley (school committee), and the defendant, South Hadley Education Association — Massachusetts Teachers Association (association), appeal from a judgment entered in the Superior Court confirming in part and vacating in part an arbitrator's award. The judgment confirmed so much of the award as had

found that the school committee had violated its collective bargaining agreement with the association by failing to conduct a fair and accurate review of the job classification of a secretary whose duties had been materially changed during the term of the agreement. The judgment vacated as beyond the arbitrator's authority, however, that part of the award that had directed the parties to meet and attempt to negotiate between themselves an appropriate remedy. We conclude that the arbitrator did not exceed his authority either in finding that the school committee had violated the agreement or in directing the parties to meet and attempt to negotiate between themselves an appropriate remedy. We therefore vacate the judgment and direct that a new judgment shall be entered confirming the arbitrator's award in its entirety.

*Background.* The background of the case is as follows. The school committee and the association were parties to a collective bargaining agreement (agreement), effective July 1, 1992, through June 30, 1996, and from year to year thereafter, covering secretaries and clerical personnel employed by the school committee. The agreement contained a management rights provision stating that the school committee retained the rights, among others, to "determine the quantity and types of equipment to be used, to introduce new methods and facilities . . . [and to determine] what and where duties will be performed." The agreement also stated, however, in Article V, § 3, that "[w]hen an employee's duties and responsibilities materially change during the term of the contract, the employee or the Association may request, and the Superintendent will review, his/her classification."

The agreement contained a four-step grievance and arbitration procedure for use "in the settlement of all differences and disputes regarding the interpretation of this Agreement or the breach thereof." The agreement also contained, at its end, a "zipper clause" stating that "[t]he Parties agree that all negotiable items have been discussed during the negotiations leading to this Agreement, and, therefore, agree that negotiations will not be reopened on any items, whether contained herein or not, during the life of this Agreement, unless by mutual agreement of both Parties."

In August, 1996, a new security system was installed at the Plains Elementary School (school) in South Hadley. The new system allowed the doors at the main entranceway to the school to remain locked and then opened from the inside as a visitor presented himself or herself at the entranceway. The system included a video camera trained at the entranceway, an outside buzzer and speaker that visitors could use to request admittance to the building, and a button that allowed the doors to be opened automatically from the inside.

After the new system was installed, responsibility for operating it from the inside was assigned to Debra Hickson. Hickson had been employed for twelve years in the South Hadley school system and was then assigned as secretary to the principal of the school. The button that opened the doors from the inside was placed on Hickson's desk, and Hickson became responsible for opening the doors in response to visitors' requests. Hickson was soon responding to between forty and fifty admittance requests per day.

On September 11, 1996, Hickson sent a memorandum to the principal stating that she believed that the newly-installed system had "increased tremendously" her job responsibilities and requesting pursuant to Article V, § 3, of the agreement that the superintendent review her classification. On September 18, 1996, the association presented a grievance alleging that the school committee had violated Article V, § 3, by making "drastic changes" in Hickson's working conditions without reviewing her job classification.

Following ensuing discussions among the parties, the principal announced by memorandum dated September 27, 1996, that the system would be suspended for an indefinite period commencing with the month of October to permit a review of the operation problems Hickson had cited. Thereafter, the system was shut down and a coded key pad device was added at the entry door in order that authorized persons who were made privy to the code could manually enter that code and obtain access to the building directly without utilizing the buzzer system. Various other modifications were also made in the operation of the system, which was reactivated in November, 1996.

668    54 Mass. App. Ct. 665 (2002)

School Comm. of South Hadley v. South Hadley Education Assn. — Massachusetts Teachers Assn.

As a result of the foregoing changes, Hickson's responsibilities were reduced but she was still required to respond to approximately twenty-five admittance requests per day, in addition to performing her regular job duties. Accordingly, in December, 1996, both Hickson and the association filed further grievances alleging that the school committee had made a substantial change in Hickson's job duties without complying with the provisions of Article V, § 3.

Following the parties' exhaustion of the grievance procedure, the association filed a demand for arbitration. The arbitrator ultimately determined that Hickson had in fact experienced a material change in her job duties and responsibilities and that the school committee's failure to acknowledge this circumstance in subsequently reviewing Hickson's job classification had constituted a violation of its duty under Article V, § 3, to provide a "correct and accurate appraisal of the true factual situation which existed." The arbitrator further noted, however, that he did not have "the informational base [or] the authority to create a new job classification or salary schedule [for Hickson], or otherwise fashion a proper remedy to rectify the situation which exists." He accordingly directed the parties to "enter into timely, good faith, and serious negotiations to resolve the issue of a just and appropriate remedy and final conclusion to the matter at hand."

The school committee thereafter filed an action in the Superior Court pursuant to G. L. c. 150C, § 11, seeking to set aside the award. The association filed an answer and counterclaim seeking an order enforcing the award. After both parties had filed cross motions for summary judgment, a judge in the Superior Court caused a judgment to enter confirming so much of the award as found that the school committee had violated Article V, § 3, but vacating the remedy awarded for that violation. In an accompanying memorandum of decision, the judge reasoned that the remedy ordered by the arbitrator was precluded by the zipper clause contained in the agreement.

*Discussion.* A court's role in reviewing an arbitrator's award pursuant to G. L. c. 150C, § 11, is limited. *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 603 (2000). "Courts inquire into an arbitration award only to

determine if the arbitrator has exceeded the scope of his author-
ity, or decided the matter based on 'fraud, arbitrary conduct, or
procedural irregularity in the hearings. . . . To do otherwise
would undermine the predictability, certainty, and effectiveness
of the arbitral forum that has been voluntarily chosen by the
parties.' " (Citations omitted.) *Plymouth-Carver Regional Sch.
Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990), quoting
from *Marino* v. *Tagaris*, 395 Mass. 397, 400 (1985).

An arbitrator does not exceed his authority unless he ignores
unambiguous provisions in a collective bargaining agreement or
awards relief "of a nature which offends public policy or which
directs or requires a result contrary to express statutory provi-
sion . . . or otherwise transcends the limits of the contract of
which the agreement to arbitrate is but a part." *Plymouth-Carver
Regional Sch. Dist.* v. *J. Farmer & Co., supra*, quoting from
*Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980). A court has
"no business overruling an arbitrator because [it gives] a
contract a different interpretation." *Concerned Minority Educa-
tors of Worcester* v. *School Comm. of Worcester*, 392 Mass.
184, 187 (1984).

1. *Violation.* The school committee claims that, in finding
that it had violated Article V, § 3, of the agreement, the arbitra-
tor ignored that the section was limited and contained no
requirements other than that the superintendent would conduct a
review of an employee's classification in the event that the
employee's job duties were materially changed. More specifi-
cally, the school committee argues:

> "In [making his award] the Arbitrator wrote a completely
> different set of obligations and responsibilities into the
> contract, which the courts have long recognized as an
> abuse of power warranting vacation of the award. The
> standard of review in the [agreement] is unambiguous and
> does not mean that the issue to be 'reviewed' is also
> subject to review by an Arbitrator. . . . A 'review' was
> satisfied as long as the Superintendent undertook a *review*
> of the grievant's request, no matter how minimal, and . . .
> the grievant has no right to arbitrate the outcome of the
> review."

It is well settled, however, that a collective bargaining agree-

ment, like any other contract, is to be read "in a manner to give effect to the chief design to be accomplished by the instrument." *Kerrigan* v. *Boston*, 361 Mass. 24, 33 (1972), quoting from *Clark* v. *State St. Trust Co.*, 270 Mass. 140, 152-153 (1930). Here, the arbitrator could reasonably determine that the parties' essential purpose in including Article V, § 3, was to ensure that, if an employee's job duties were materially changed following the parties' entry of the agreement, then the employee's job classification would similarly be changed and, where appropriate, upgraded so that the employee would receive an increase in pay. The arbitrator could accordingly interpret the provision as requiring not just a minimal or perfunctory review of an employee's job classification in the event that the employee's job duties were materially changed, but rather a review that reasonably recognized such change and resulted in a corresponding change in the employee's job classification if the circumstances warranted. Otherwise, as the arbitrator expressly noted, the provision would be rendered utterly meaningless and incapable of accomplishing its purpose.

Moreover, as recited above, the grievance and arbitration procedure contained in the parties' agreement provided that it was intended for use "in the settlement of all differences and disputes regarding the interpretation of [the] Agreement or the breach thereof." Since the procedure did not exempt claimed violations of Article V, § 3, the arbitrator could reasonably conclude that it was fully applicable to such claimed violations.

We therefore reject the school committee's claim that the arbitrator exceeded his authority in determining that the school committee had violated Article V, § 3, of the agreement by failing to conduct a reasonable review of Hickson's job classification, and that the violation was subject to the grievance and arbitration procedure. The arbitrator reasonably relied on the language of the agreement in reaching this result and did not exceed his authority.

The school committee's reliance on *Sheahan* v. *School Comm. of Worcester*, 359 Mass. 702 (1971), is misplaced. In that case, the Supreme Judicial Court held only that an agreement by the parties that controversies between them could be submitted to the board of conciliation and arbitration for review did not

constitute an agreement by either of them to submit any controversy to the board for binding arbitration. *Id.* at 707-708. Here, by contrast, the school committee agreed that the superintendent would review an employee's job classification in the event that an employee's job duties were materially changed. It also agreed that any dispute regarding the school committee's compliance with its obligations under the agreement would be subject to the grievance and arbitration procedure contained in the agreement. The arbitrator therefore did not exceed his authority in reaching the result that he did.

2. *Remedy.* As the judge recognized, this court has previously upheld an arbitration award directing the parties to negotiate regarding the terms of an appropriate remedy for a contract violation found by the arbitrator. See *Massachusetts Bay Transp. Authy.* v. *Boston Carmen's Union, Div. 589*, 17 Mass. App. Ct. 104, 109 (1983). Nevertheless, the judge concluded that the zipper clause contained in the parties' agreement precluded such an award in this case because the clause prevented "the type of collective bargaining which would arrive at a new classification or pay rate."

In fact, as set out above, the zipper clause provided only that negotiations would not be "reopened" on any item during the term of the agreement. It did not provide that negotiations were precluded on items or matters never previously discussed. Here, the new system and its impact on Hickson's job responsibilities could not possibly have been discussed at the time the parties entered into the agreement because the system had not been installed at that time. Hence, the zipper clause had no application to the circumstances that subsequently developed. See *NLRB* v. *Challenge-Cook Bros. of Ohio, Inc.*, 843 F.2d 230, 233-234 (6th Cir. 1988) (zipper clause did not constitute waiver by union of right to bargain over effects of employer's unilateral changes during term of contract); *Whitman-Hanson Regional Sch. Comm.*, 10 M.L.C. 1283, 1286 (1983) (finding that zipper clause did not preclude a union from bargaining over employer-initiated changes occurring during term of agreement).

We therefore conclude that the zipper clause did not preclude the award ordered by the arbitrator in this case. The award was limited and did not direct the parties to reopen negotiations on an item or matter covered by the zipper clause.

The school committee additionally claims that the arbitrator's award "usurps the power and authority granted by statute to the Commonwealth's Labor Relations Commission, and . . . trammels upon the School governance principles established by the Education Reform Act." The school committee, however, has failed to advance any reasoned argument, with appropriate citation of authorities, in support of these claims, and we therefore decline to consider them. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Campbell Hardware, Inc.* v. *R.W. Granger & Sons, Inc.*, 401 Mass. 278, 280-281 (1987). We note that arbitrators regularly have entered awards similar to the one in this case where, as here, they have had insufficient information to devise a more substantive remedy. Elkouri & Elkouri, How Arbitration Works 395 (1997).

*Conclusion.* The judgment of the Superior Court is vacated. A new judgment shall be entered confirming the arbitrator's award in its entirety.

*So ordered.*